This is an appeal from the Circuit Court of Montgomery County. Grain Mart, Inc. (Grain Mart) brought suit against Eldon Tallant (Tallant), seeking damages for breach of contract and fraud. Tallant filed a counterclaim against Grain Mart and Kenneth J. Neal (Neal), President of Grain Mart, also alleging breach of contract and fraud. The trial court entered summary judgment against Grain Mart on its claim of breach of contract and directed a verdict in favor of Neal on Tallant's counterclaim and awarded Grain Mart $11,920.00 in compensatory damages and $6,000.00 in punitive damages on its fraud claim. The trial court entered judgment accordingly. Tallant appealed after his motions for judgment notwithstanding the verdict, new trial, and remittitur were denied.
In essence, Tallant raised five issues on appeal, each of which will be considered separately. For reasons discussed below, *Page 1253 
the judgment of the trial court is affirmed conditionally.
In late June or early July 1980, Neal telephoned Tallant, soliciting his business to sell Grain Mart his soybeans. During this time, Grain Mart and Tallant reached an agreement whereby Tallant agreed to sell Grain Mart old crop or cash soybeans. These deliveries were completed by Tallant. Grain Mart alleged that during this same period, however, Tallant agreed to five additional contracts to sell soybeans to Grain Mart to be delivered in November 1980. Based on its conversations with Tallant, Grain Mart sold the five alleged contracts to Cargill, Inc. In August 1980, Neal received numerous complaints from Tallant concerning the delay in receiving payment from Grain Mart on the alleged July contract. Tallant further complained that Grain Mart had not paid him for all of the soybeans shipped on the old crop or cash soybeans. Moreover, Tallant did not deliver the soybeans which were to be delivered in November on the alleged five contracts; therefore, Grain Mart repurchased its contract with Cargill at a cost of $11,920.00.
The first issue raised by Tallant is whether the trial court erred in its instructions to the jury regarding intentional misrepresentations, reckless misrepresentation, and deceit. However, the only objection that Tallant made which is remotely connected with the above claimed error is incorporated in the following statements made at trial:
 MR. WEBB: Your Honor, we also except to the charge that reckless misrepresentation could carry punitive damages, and I believe your Honor made that charge three separate times.
THE COURT: I also told them that deceit could.
MR. WEBB: Yes, sir.
THE COURT: Do you want to except to that, too?
 MR. WEBB: Yes, sir, insofar as it contains the word reckless.
It is obvious that these statements are not relevant to the error alleged in Tallant's brief that Grain Mart did not allege deceit in its pleading and that no evidence was presented by Grain Mart to support the trial court's instructions. Instead, the stated objection merely relates to the question of punitive damages. Therefore, Tallant cannot predicate error on a ground which he did not state at trial. Rule 51, A.R.C.P.; State FarmMutual Automobile Insurance Co. v. Wright, 57 Ala. App. 356,328 So.2d 608 (Ala.Civ.App. 1976); 9 Wright and Miller, FederalPractice and Procedure: Civil § 2554 (1973).
Tallant claims that the trial court erred by instructing the jury that usage of trade may be considered in determining whether fraud was committed. However, Tallant, in his brief, has failed to include any citations to authorities or reference to the record in support of this argument as required by Rule 28 (a)(5), ARAP, which states in pertinent part: "[T]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Consequently, we will not consider this issue. SeeFirst Shelby National Bank v. Mitchell, 406 So.2d 959
(Ala.Civ.App. 1981).
The second issue raised by Tallant is that the jury's verdict was contrary to the weight of the evidence. Tallant contends that there was not a scintilla of evidence to support the jury's finding that he committed fraud, and, thus, the trial court erred in failing to direct a verdict in his favor.
Legal fraud is defined in Code 1975, § 6-5-101:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
In Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams,394 So.2d 912 (Ala. 1981), at 914, this court stated:
 It has been held that whether the representations were made willfully, recklessly or mistakenly, in order to be actionable *Page 1254 
fraud there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result. International Resorts, Inc. v. Lambert, Ala. 350 So.2d 391 (1977); Mathis v. Jim Skinner Ford, Inc., Ala., 361 So.2d 113 (1978).
Tallant attempts to support his argument by stating that at the time of the alleged misrepresentation, the soybean crops, which are the material facts on which Grain Mart based its claim, were not in existence; therefore, he says, the second essential element of fraud as set out in Crews was not present. We find this argument to be without merit. Pertinent parts of the Commercial Code state:
 "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty.
Code 1975, § 7-2-105.
 (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs:
. . . .
 (c) When the crops are planted or otherwise become growing crops or the young are conceived if the contract is for the sale of unborn young to be born within 12 months after contracting or for the sale of crops to be harvested within 12 months or the next normal harvest season after contracting whichever is longer.
Code 1975, § 7-2-501.
Tallant admits that at the time the alleged contracts were made, it was planting season, which makes Tallant's actions fall precisely within the definition of existing and identified goods as stated above.
Clearly, then, the second essential element in Cecil CrewsChevrolet-Oldsmobile, supra, was proved by Grain Mart. We are also of the opinion that the first, third and fourth elements were proved.
The third issue argued by Tallant is that the trial court erred in directing a verdict for Neal on the counterclaim. To support this argument, Tallant states that all of his transactions concerning the sale of soybeans were with Neal personally and that Neal personally agreed to accept the risk of loss. We find this argument to be without merit. Neal is president of Grain Mart and does most of the soliciting for the corporation. In addition, the basis of Tallant's argument that Neal personally accepted the risk of loss is Grain Mart's exhibit No. 10, which shows a corporate heading. All statements made by Neal to Tallant were within the perimeter of the grain business and corporate in nature. It is axiomatic that officers of a corporation are merely agents of the corporation and are not personally liable for obligations incurred by the corporation in the usual course of business, absent a statute, charter provision, or personal agreement to the contrary.Whitehead v. Davison Oil Co. Inc., 352 So.2d 1339 (Ala. 1977). Applying this rule to the instant case, we do not find a scintilla of evidence to support Tallant's claim that Neal is personally liable to him for breach of contract and fraud. Therefore, we hold that the trial court did not err in directing a verdict for Neal on this issue.
In the fourth issue, Tallant contends that the trial court erred to reversal by admitting the deposition of Tom Hill, Grain Mart's expert witness, by way of oral presentation by the court reporter who had taken the deposition. At the beginning of the trial, it was discovered that the court reporter had not transcribed and filed Hill's deposition. The trial court denied Grain Mart's motion for a continuance, but stated that the deposition could be read into evidence. Tallant asserts that he did not have sufficient time to object to all objectionable *Page 1255 
questions, and, therefore, prejudicial and irrelevant evidence was admitted. Although Tallant made numerous objections during the reading of the deposition (many of which were sustained), he did not make a motion to exclude the entire deposition. Although testimony from the deposition was admitted in an unusual manner, we are unable to conclude that its admission constituted prejudicial error where Tallant did not object to the procedure or make a motion to exclude the evidence.
Finally, Tallant argues that the evidence is insufficient to support the jury's imposition of $6,000.00 in punitive damages. In TG Y Stores v. Atchley, 414 So.2d 912 (Ala. 1982), at 914 we stated:
 The verdict of the jury is presumed to be correct, and will not be set aside unless it is against the preponderance of the evidence. Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725
(Ala. 1979). The presumption of correctness is strengthened when, as in the present case, the trial judge refuses to grant a motion for a new trial.
However, an appellate court will revise a jury's verdict if it is convinced by a "preponderance of the evidence that the jury's verdict was palpably wrong and manifestly unjust."Palmer v. Palmer, 390 So.2d 1050, 1052 (Ala. 1980).
Here, we have stated that the evidence is sufficient to support the jury's finding of legal fraud; however, that determination, in and of itself, is not sufficient to support the imposition of punitive damages against Tallant. Although a jury may award compensatory damages for legal fraud where the misrepresentations were made innocently, punitive damages may be awarded only if the evidence establishes an intent to deceive or defraud. See Courtesy Ford Sales, Inc. v. Clark,425 So.2d 1075 (Ala. 1983), and Ex parte Smith, 412 So.2d 1222
(Ala. 1982). The evidence in this case does not show that Tallant, at the time the contracts were made, had a willful intent to deceive or defraud. Absent such intent, the jury was not authorized to grant punitive damages to Grain Mart.
The evidence in this case supports an award of only compensatory damages. Therefore, we require a remittitur of $6,000.00 (the amount of the punitive damages) as a condition to affirmance of the trial court's order denying Tallant's motion for a new trial. In the event that Grain Mart declines to file the required remittitur with the clerk of this court within twenty-eight (28) days from the date of entry of judgment, the judgment will be reversed and the cause remanded for a new trial. Otherwise, the judgment as corrected on remittitur will be affirmed.
AFFIRMED CONDITIONALLY.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.